```
              UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL H. VADEN,              : CIVIL NO: 1:11-CV-01807
                               :
         Petitioner            :
                               : (Judge Rambo)
     v.                        :
                               : (Magistrate Judge Smyser)
WARDEN BLEDSOE,                :
                               :
         Respondent            :
```

**REPORT AND RECOMMENDATION**

## I. **Background**.

The petitioner in this habeas corpus case is a federal prisoner.  He is challenging the prison disciplinary process which led to the loss of good conduct time.  He claims that he was denied due process when the Discipline Hearing Officer refused to view a videotape of the incident at issue.

The petitioner, proceeding *pro se*, commenced this action by filing a complaint.  He alleges that he was found guilty on a "bogus incident report."

In December of 2010, the petitioner received an incident report charging him with refusing to obey an order of a staff member and with assault.  The incident report alleges that the petitioner initially refused the orders of Officer

Skurkis to return to his cell, but that, after several additional orders, he returned to his cell.  The incident report further alleges that, before Officer Skurkis could lock the cell door, the petitioner kicked the cell door open, barely missing the officer.

The incident report was referred to the Unit Discipline Committee.  The petitioner claimed that he did not kick the door and he requested the Committee to review video footage.  The Unit Discipline Committee referred the report to the Discipline Hearing Officer (DHO) for a hearing.

The petitioner was represented by a staff member at the hearing before the DHO.  The DHO noted in his report that the staff member indicated that he had gone to "SIS", that "they did not have the video," and that "[t]here was nothing for me to see."  At the hearing, the petitioner denied disobeying an order and denied kicking his cell door.  The DHO noted that the petitioner stated that "[w]ithout that video, I can't win no shot [incident report].  I need the video to show that if I kick the door it would not hit you."  The petitioner presented the testimony of another inmate who testified he witnessed the exchange between the petitioner and the officer and that the

2

petitioner did not refuse an order and did not hit the officer with the door or push the door hard.

The DHO found the petitioner guilty of both charges, and he sanctioned the petitioner to among other things the forfeiture of statutory good time.  The DHO found the statements in the report of Officer Skurkis more credible than the testimony of petitioner and his witness.  He noted in his report that the video evidence that the petitioner requested was "nonexistent."

The petitioner's administrative appeals of the DHO's decision were denied.

The petitioner alleges that the video would have exonerated him had he been allowed to present it.  The petitioner is seeking to have the incident report expunged and his parole date reinstated.

Counsel was appointed to represent the petitioner.  A hearing was held on May 23, 2012.

3

**II.  Discussion**.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  A due process claim requires a two-part analysis.  First, the court must determine whether the interest asserted by the petitioner is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

"Federal prisoners have a liberty interest in statutory good time credits." *Campbell v. Holt,* 432 Fed.Appx. 49, 51 (3d Cir. 2011).  Thus, where a disciplinary proceeding may result in the loss of good time credits, a prisoner is entitled to certain procedural protections. *Id.*  Nevertheless, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

4

In *Wolff,* the Supreme Court determined the elements of process due to a prisoner who is facing a serious institutional misconduct charge which could lead to the deprivation of a protected liberty interest.  The Court held that the right to due process requires that the prisoner receive a hearing preceded by at least 24 hours advance written notice of the charged violations. *Id.* at 564.  The inmate must be allowed at the hearing to call witnesses and to present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. *Id.* at 566.  Where an illiterate inmate is involved or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, the inmate should be allowed to seek the aid of a fellow inmate or aid in the form of help from a staff member. *Id.* at 570.  There must be a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 564.

Additionally, the Court subsequently held, due process requires that there be some evidence to support the findings of

5

the disciplinary hearing fact finder. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. § 541.1, *et seq.* Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. § 541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. *Id.* The incident is then investigated. *Id.* at § 541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. *Id.* at § 541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. *Id.* at § 541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category,

6

the UDC automatically refers the incident report to the DHO for further review. *Id.* at § 541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. § 541.8. The prisoner is entitled to notice of the charges at least 24 hours before the hearing. *Id.* at § 541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. *Id.* at § 541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. *Id.* at § 541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. *Id.* The DHO considers all evidence presented at the hearing. *Id.* The decision of the DHO must be based on at least some facts and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. *Id*. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. *Id.* at

7

§ 541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. *Id*.

If surveillance footage of the incident existed, the petitioner was entitled to have the DHO review that footage. *See Burns v. PA Dept. of Corrections,* 642 F.3d 163, 174 (3d Cir. 2011)(holding that inmate was denied due process when the hearing examiner failed to view available evidence to determine its relevance and suitability for use at the disciplinary hearing).

At the May 23, 2012 hearing, the evidence presented established that there was a video recording that would have likely included a visual recording of the incident giving rise to the disciplinary charge of assault. There is no evidence or contention that the video recording would not have contained probative evidence as to the issue whether the petitioner had, as was charged, "kicked the cell door open, barely missing the officer." The video recording was not preserved and was not available for the petitioner's use at the hearing.

8

The respondent presents no argument that, in this prison disciplinary matter involving potential and actual serious penalties, the petitioner was not entitled to have the opportunity to present probative documentary evidence.  The respondent argues that the petitioner never requested that the video recording be preserved.

The petitioner did make a clear and adequate request for the preservation of the video recording when, on the day after the alleged assault, during a Unit Disciplinary Committee (UDC) interview he said to the UDC representative "[l]ook at the camera.  I never kicked the door."

The respondent does not supply a reference to a procedure that the petitioner was to have followed but failed to follow to assure the preservation and availability of documentary evidence.  However, the hearing testimony establishes that a procedure for the preservation of video recordings of potential relevance to disciplinary proceedings was put into place at USP Caanan after this (Vaden) proceeding.

9

The respondent argues that the petitioner's claim is akin to a claim of a right to a thorough or complete investigation by prison authorities and that a prisoner does not have such a right. But the petitioner's claim is not that. It is a claim that he was denied the right to present evidence of a nature that he had specifically requested investigators to review and had implicitly requested be preserved and that needed no investigation to be discovered.

The respondent argues that the evidence of assault, the guard's testimony, was sufficient evidence to find a disciplinary violation despite the contrary inmate testimony. That assertion is correct. But the petitioner is not raising a sufficiency-of-the-evidence claim. He is raising a claim of a denial of a right to present exculpatory evidence.

The respondent cites and relies upon *Griffin v. Spratt*, 969 F.2d 16 (3d Cir. 1992), where the Court held that a failure to preserve potentially useful evidence does not constitute a denial of due process of law. In *Griffin,* the Court considered a prison disciplinary case subject to *Wolff v. McDonnell* due process requirements in which a prison guard had discovered a

10

quantity of liquid in a bucket in the prisoner's cell.  The
guard noted that the liquid in the bucket was foaming at the
top and had the stench of rotten fruit and of alcohol.  The
guard noted other circumstances indicative of the fermentation
and packaging of an alcoholic beverage.  He ordered the
prisoner to flush the liquid in the cell's toilet.  He charged
the prisoner with violations of making a fermented beverage,
possession of contraband and possession of intoxicating
beverages.  The petitioner was found to have possessed
intoxicating beverages.  He argued in his civil action that his
disciplinary penalty violated due process because the liquid
forming the basis for his discipline had not been preserved.
The Court stated there was no evidence that the liquids were
destroyed in bad faith in order to prevent their possible use
for exculpatory purposes at the disciplinary hearing.  The
Court held that the non-preservation of the liquids found by
the guard, for presentation at the prisoner's disciplinary
hearing, did not violate the prisoner's due process rights.

   The petitioner filed a reply brief and did not seek to
distinguish this case from *Griffin*.  This case can not be
materially distinguished from *Griffin*.  There is no evidence

11

that the video recording was destroyed in bad faith in order to prevent its use at the disciplinary hearing. The non-preservation of the video recording did not violate the petitioner's due process rights.

## III. Recommendation.

It is accordingly recommended that the petition for a writ of habeas corpus be denied.

                                                 ***/s/ J. Andrew Smyser***
                                                 J. Andrew Smyser
                                                 Magistrate Judge

Dated: July 13, 2012.